## JOHNSTON ET AL. v. THE LITTLE HORSE CREEK IRRIGATING COMPANY.

APPEAL AND ERROR—PARTIES—WATER AND WATER RIGHTS—SALE OF WATER RIGHT—APPURTENANCE TO LAND—JUDGMENT, CONSTRUCTION AND OPERATION OF—CHANGE IN PLACE OF DIVERSION OF APPROPRIATED WATER—AGREEMENT BETWEEN DIFFERENT OWNERS OF A WATER RIGHT FOR USE OF ALL THE WATER BY EACH ON ALTERNATE WEEKS.

1. Where all the necessary and interested parties are joined as plaintiffs in error to review a judgment against them as defendants in the court below, the inadvertent naming, as one of the plaintiffs in error, a former co-defendant, who had died before judgment, and in whose stead certain other defendants had been substituted as executors and heir, respectively, one of whom had succeeded to all the rights of the deceased defendant, will be regarded as so far immaterial that the name of the deceased will be stricken from the title of the cause, on motion of plaintiffs in error.

2. A water right, acquired by prior appropriation for irrigation, is a property right, and as such may be sold and conveyed separate from the land to which it was first applied, provided other appropriators are not injuriously affected by such transfer.

3. A sale of a water right will be injurious to others if the burden upon the use is thereby enlarged beyond that which rested upon it under the original appropriation, and while in the hands of the original appropriator as he was entitled to and did use it.

4. That which an individual appropriator of water for beneficial purposes may sell is his water right; by his appropriation he secures no surplus water, and hence, while retaining his appropriation or water right, he cannot sell surplus water which he does not need, but, if during any period he does not require the use of the water appropriated, it falls during that period to the subsequent appropriator who needs the same and can beneficially use it.

5. The only property in the water owned by an appropriator is a right to the use of it as measured by his appropriation, and that property right he may sell if other appropriators will not be injuriously affected thereby.

6. There is nothing in the various statutory provisions requiring, as a condition to an appropriation of water for irriga-

tion, a showing as to the lands to be irrigated, and a description thereof in the final certificate of appropriation issued by the state board, which prevents the sale and conveyance of the water right separate from the land to irrigate which the appropriation was originally made, where the transfer does not injuriously affect other appropriators.

7. The fact that the rule permitting the sale of a water right, separate from the land, has been the source of litigation, is not a sufficient reason for the courts to 'destroy the property right of an appropriator by denying his right of sale.

8. Upon the sale and conveyance of a water right, acquired for the irrigation of certain land, to another for use upon other land, the water right becomes severed from the land to which it was originally attached, and immediately becomes appurtenant to the land upon which the grantee intends to and does apply it.

9. A conveyance in controversy of an undivided one-half interest in a water right, acquired for irrigation, is upheld as valid; the deed reciting that the interest conveyed is intended to be wholly severed from the lands of the grantor and to be used by the grantee in irrigating lands at such point or points as he may elect, and it appearing that, after the transfer, the grantor did not irrigate more than one-half as much land as formerly under such water right, and that the aggregate of the lands irrigated by both grantor and grantee was not greater than that previously irrigated by the grantor, and it not appearing that other complaining appropriators were injured by the use of the water pursuant to the transfer, or by the diversion of such water into the ditch of the grantee instead of at the point of original diversion, or that there had been any waste.

10. A decree enjoining defendants from interfering with the use and enjoyment by plaintiff of the water to which he is entitled, under a prior appropriation, is not objectionable for enjoining interference with the maximum of plaintiff's appropriation, regardless of the customs and necessities of those engaged in irrigating land, since the decree cannot operate to prevent the defendants taking any water not required by plaintiff for the irrigation of the lands to which his right applies.

11. There is nothing in the law of prior appropriation of water that prevents a change of the place of diversion if that can be accomplished without injury to other appropriators.

12. An agreement in a conveyance of an undivided interest in a water right providing for the use of all the water by grantor and grantee on alternate weeks is not objectionable where such use does not operate to the detriment of other appropriators.

13. Upon the conveyance of an undivided one-half interest in a water right, the grantor· and grantee stand in relation to each other the same as if they had originally made a joint appropriation.

[Decided December 31, 1904.]                    (79 Pac., 22.)

ERROR to the District Court, Laramie County, HON. RICH-ARD H. SCOTT, Judge.

The material facts are stated in the opinion.

*Van Orsdel & Burdick* and *Platt Rogers,* for plaintiffs in error.

The ownership and control of the waters of Wyoming are vested in the state. (Const., Art. 8, Sec. 1; id., Art. 1, Sec. 31.) These constitutional provisions are self-operative. They delegate no authority to enlarge or diminish their operation, and the Legislature would be powerless to enact a law divesting the state of its title to or control of its waters. The constitution designates the officers to act in controling state waters. (Const., Art. 8, Secs. 1 and 5.)

The right to water is a right to use, and the beneficial use of water on a particular tract of land operates as an exclusive dedication to such use for that particular tract, and any deed or conveyance transferring such water for use elsewhere is contrary to the intent of the statutes and, therefore, void. At common law the right to the use of water was usufructuary, and its use could ·not be changed so as to interfere with the rights of others. (Black's Pomeroy on Water Rights, Sec. 4; 1 Coke's Inst., 4; 2 Blackst., 18.) The statutes of Wyoming requiring a permit to divert water are different from those in any other state. The essential difference is the provision requiring an accurate and definite description of the identical land on which a beneficial use

of water, is to be made when appropriated.  (R. S. 1899, Secs. 917-925.)  The application for a permit is not so much for a certain amount of water as for water for a specific beneficial use, and, when used for irrigation, the specific land must be stated in the application; and the State Engineer may approve an application and grant a permit for less amount than applied for if the lesser amount should be deemed sufficient for the purpose indicated in the application.  Section 1317, Revised Statutes, 1887, the first law enacted in the territory on the subject, differs but slightly from the common law, as it recognizes the right of adjacent owners to appropriate water from the streams of the territory.  The method of obtaining a decree and the contents thereof show that the particular land irrigated had the special attention of the Legislature.  (R. S. 1899, Secs. 863, 871, 872, 873.)

Early legislation in Wyoming bearing on the subject of irrigation was not unlike that of surrounding states, but, profiting by an intelligent knowledge of the mistakes made in such legislation, Wyoming early parted from the theories underlying the laws of adjacent states, and we find as a result constant and progressive growth and development here of the idea and theory that the waters of the state should be diverted and appropriated under intelligent supervision to reclaim particular lands, and, having been so appropriated, should not be transferred from the lands for which appropriated to the detriment thereof to other lands.  The danger of the theory formerly prevailing was evidently apparent to the Legislature of 1888, for, by the provisions of Section 14, Chapter 55, of that session, the limitations of a right to water are clearly defined as in the nature of an easement depending on use.  The legislation of 1890-91 introduced land as an essential element of appropriation, and later, in 1895, an act was passed vesting in the State Engineer authority to refuse or modify applications for permits in the public interest.  Again, Revised Statutes 1899, Section 872, provides that no allotment of water shall

include more than one cubic foot for each seventy acres of land for which "the appropriation shall have been made." It follows that after the appropriation was made for a particular seventy acres of land, it was not intended that it should be subsequently used to the benefit of another tract; and this intent is to be discovered in the various laws passed from time to time and now in force, governing the appropriation of water in this state. This is particularly noticeable in the phraseology of Section 31, Chapter 27, Laws 1895, which provides that a water right to irrigate lands acquired under the provisions of that act shall attach and become appurtenant to the land as soon as title passes from the United States to the state.

The difference in the theory of the laws of this state and that governing in Colorado and other arid states renders the decisions in those states of less influence than would otherwise be the case. Idaho and Nebraska, however, have observed the same danger from the doctrine that a water right might be transferred separate from the land, and statutes have been passed in those states indicating a different theory. (S. L. Idaho 1895, Sec. 14, of S. B. 87; Slosser v. Salt River Can. Co., 65 Pac., 332.)

The law of California and many other Pacific states and territories is the outgrowth of the mining customs in the early days of the gold excitement and prior to any legislation upon the subject. (Black's Pomeroy on Water Rights, Secs. 12-15; Jennison v. Kirk, 98 U. S., 453.) The description of the land, nature of the use, size of the ditch, character of the soil, the natural laws of irrigation, the probability of abandonment or partial disuse, and the future changes in the soil, are notice of the amount of the water appropriated. (Creek v. Bozeman W. Co., 38 Pac., 459.) The conveyance in controversy changes the point of diversion from the stream, for which there is no authority in the laws of this state; while in many of the states there is express statutory authority for such change. Change of place of diversion can never be made when it interferes with

the right of other appropriators.  Hence it was incumbent upon the plaintiff to show that the transfer would not conflict with the rights of any other appropriator.  (Junkans v. Bergin, 7 Pac., 684; Fuller v. Swan River P. M. Co., 19 Pac.. 836.)  It has never been held that an individual appropriator can maintain two points of diversion from one stream for a single appropriation at the same time; yet this is what the conveyance in question attempts to authorize.  It has never been held that an appropriator could sell a surplus of water beyond the amount necessary for the purpose of the original appropriation.  (Ditch Co. v. Armstrong, 40 Pac., 989; Creek v. Boseman W. Co., 38 Pac., 459.)  An appropriator is entitled to priority only for the quantity actually used.  (Sieber v. Frink (Colo.), 2 Pac., 901.)  A water right can be conveyed in this state by conveyance of the land to which the water is attached as a part and parcel of the grant.  (Frank v. Hicks, 4 Wyo., 502; Donald v. Humphrey, 1 Mont., 518.)  A water right is an easement appurtenant.  (Frank v. Hicks, *supra;* Standard v. Water Co., 19 Pac., 689; Tucker v. Jones, 19 Pac., 571; Crocker v. Benton, 28 Pac., 953; Cave v. Crofts, 53 Cal., 135.)  An easement appurtenant cannot be sold separate and apart from the land except by the concurrent action of the dominant and servient owners.  In the case of a water right in Wyoming the state is the servient owner.  When we speak of appurtenant in connection with the land, it refers to something annexed to or belonging to the land and necessary to its full use and enjoyment.  (Tiedeman on Real Prop., Sec. 842; Boone on Real Prop., Sec. 306.)  An easement is a privilege without profit which the owner of one neighboring tenement may have of another existing in respect to their several tenements, by which the servient owner is obliged to suffer, or not to do something on his own land for the advantage of the dominant owner.  (Gale on Easements, 5; Oliver v. Hook, 47 Md., 301; Boone on Real Prop., Sec. 135; Tiedeman on Real Prop., Sec. 597.)  An easement appurtenant runs with the land regardless of

change of owners. (Knecker v. Voltz, 110 Ill., 264; Hills v. Miller, 3 Paige, 254.)

An easement appurtenant cannot be assigned separately from a dominant estate, and an easement in gross is not assignable at all nor inheritable. (Person v. Johnson, 63 N. Y., 62; Oliver v. Hook, *supra;* Milk v. Breckenridge, 29 O. St., 642.) If a water right represents a property interest, then it ought in justice to be taxed as other property; yet no provision has been made for taxing such rights in this state, for the reason that the Legislature has never recognized that such a right was a property interest capable of being conveyed. Our contention is that ownership of water and the ownership of water rights are indivisible. The water is a component part of the right, and if the whole is property the component parts that make up the whole must be property, and hence the water itself would also be property which an appropriator can sell and convey.

The change of place or purpose of appropriation is not permitted as against parties who have acquired subsequent rights when it would enlarge the amount of water used upon that of the original appropriation, or otherwise increase the burden imposed upon them by such appropriation. (Black's Pomeroy on Water Rights, Sec. 69; Fuller v. Swan River M. Co., 19 Pac., 836; Greer v. Heiser, 16 Colo., 736; Ramelli v. Irish (Cal.), 31 Pac., 41; Junkans v. Bergin, 67 Cal., 267; Ware v. Walker, 70 Cal., 591; Sieber v. Frink, 7 Colo., 148; Whittier v. Mfg. Co., 9 N. H., 454; Woolman v. Garringer, 1 Mont., 535; Means v. Bicknell, 7 Cal., 261; McDonald v. Bear River Co., 13 id., 220; Kidd v. Laird, 15 id., 161; Butte T. & M. Co. v. Morgan, 19 id., 609; Davis v. Gale, 32 id., 26.)

An appropriator of water acquires no title or right in the water of the stream until it is diverted into his ditch and, as soon as used in the ditch or turned into the stream, the control of the water is thereby lost to the appropriator. (Farm Inv. Co. v. Carpenter, 9 Wyo., 110; Black's Pomeroy on Water Rights, Sec. 57; Dalton v. Bowker, 8 Nev., 190;

Water Co. v. Gaze, 26 Pac., 889.) Where there is a statute providing for using the channel of the stream as a conduit, it is not authorized until the water has been diverted and appropriated from the channel of the main stream. (Mill's Ann. Stat. Colo., Sec. 2271; Cal. Civil Code, Sec. 1413; Wash. Statutes, Sec. 1730; Session Laws Oregon, 1891, Sec. 8; General Laws Montana, Sec. 1253; Idaho S. B. No. 87, 1895, Sec. 13; Neb. H. R. No. 443, 1885, Sec. 45.)

The trial court erred in concluding that the rights of the Spring Vale Ditch Company, as determined by the board in 1891, attached and became vested in 1884. No right attached to the company in 1884 that did not depend upon the adjudication in 1891. Without the decree the right was merely inchoate. The actual right depended upon a final adjudication by a proper court. At the time of the adjudication the company could only claim the right to so much water as it had applied to its beneficial use. (Salt River Canal Co., 65 Pac., 232; Farm Inv. Co. v. Carpenter, *supra*.) The ditch company cannot now be heard to impeach the decree, it having submitted its claim to the legally constituted authority. The foundation of the rights asserted by the company is the decree. (Handy Ditch Co. v. Ditch Co., 38 Pac., 301; Jackson v. Lamphire, 3 Pet., 280; 130 U. S., 238; Florida v. Furman, 180 id., 402; Barker v. Harvey, 181 id., 481.) The rights of the ditch company are subject to the provisions of the constitution of the state and the legislation carrying those provisions into effect. (Farm Inv. Co. v. Carpenter, *supra*.) Strictly speaking, a water right in this state is not a vested right. It is more in the nature of a license or a right of use depending upon numerous contingencies. It is subject to forfeiture by a failure to use the water for two successive years. An absolute right to the use is not acquired, but it is at all times dependent upon the action of the user. The statute defines the limit of the right. A certificate of the Board of Control is simply a license to use water under the conditions therein expressed and under statutory restriction. (Farm Inv. Co.

v. Carpenter, *supra;* Ind. Co. v. Ditch Co., 45 Pac., 444;
White v. Reservoir Co., 43 Pac., 1028; Canal Co. v. Handy
Ditch Co., 43 Pac., 535; Long on Irr., Sec. 106.)

If appropriators can sell surplus water and transfer it
from one place to another without authority from the State
Board of Control, the superintendents and water commis-
sioners will be unable to regulate the use of water. If by
the sale in question the plaintiffs in error are damaged to
any extent whatever, the conveyance must fall. The plain-
tiffs in error are damaged by the injunction preventing them
from taking advantage of the rights abandoned by the
Spring Vale Ditch Company by reason of the sale. It ap-
pears from the testimony that the quantity of water usually
flowing down the creek at the headgate of the Spring Vale
Ditch Company is less than the amount awarded to it in the
decree of the board; which decree fixed the place of use,
as well as the amount that might be used; and even if that
was improper, it cannot now be collaterally attacked. (Wa-
ter Supply Co. v. Tenney, 24 Colo., 344.) The testimony
establishes an absolute abandonment on the part of the
Spring Vale Ditch Company at the time of the execution of
the conveyance, except sufficient to irrigate 300 acres of
land, and it must be assumed that the plaintiffs in error,
being the next succeeding appropriators, were getting the
water not needed for the remainder of the land previously
irrigated under the appropriation of the Spring Vale Ditch
Company. Under our statute an appropriator is not per-
mitted to abandon the use for one week, and during a suc-
ceeding week use double the standard allowed by law. At
no time can he use to exceed one cubic foot per second of
time for less than seventy acres of land. Hence, the Spring
Vale Ditch Company has abandoned the amount of its orig-
inal appropriation which it does not use, and such abandon-
ment accrues to the benefit of the plaintiffs in error as the
next succeeding appropriator. (Handy Ditch Co. v. Canal
Co., 62 Pac., 847.)

The plaintiffs in error are damaged by the operation of
the deed in controversy, since they must be entitled to the

water of the stream when not used by the Spring Vale Ditch
Company on the specific 700 acres of land set out in the
decree, and the judgment requires them to allow the entire
original appropriation of the Spring Vale Ditch Company to
pass their headgate. Even if the conveyance should be held
to be invalid, the injunction cannot be upheld, for the reason
that the evidence shows the aggregate irrigation by the
Spring Vale and Little Horse Creek ditches of 355 acres—
180 acres under the Little Horse Creek ditch and 175 acres
under the Spring Vale ditch. The judgment appealed from
gives the Spring Vale Company a monopoly of all water
in the creek, regardless of use, which is not authorized by
law nor by the customs of irrigation. Anything which may
be done which will diminish the expectation of the plaintiffs
in error to obtain water at times when it would not be used
under the Spring Vale ditch is in derogation of the rights
of the former. (Cache La Poudre v. Water Supply Co., 53
Pac., 331; Colo. M. & E. Co. v. Irr. Co., 56 Pac., 185; Gas-
sert v. Noyes, 44 Pac., 959.)

The conveyance in question is not a conveyance of water
in the sense that anything is made a definite subject of con-
veyance. It is in effect but a grant of a right to use water
when not needed by the Spring Vale ditch. (Manning v.
Fife, 54 Pac., 111; Myrne v. Crofts, 15 Pac., 300; Decker
v. Marble, 49 Pac., 892.)

It is contended by the defendant in error that some of the
questions in this case were adjudicated in the former trial,
the record of which was introduced in evidence on the trial;
but it is an elementary principle that only those matters
are to be considered adjudicated which were made general
issues by all parties in the action. An examination of the
pleadings in the former case discloses the fact that the only
issue common to all the parties in that action was whether
or not the finding of the board adjudicating the priorities
not having been appealed from was conclusive as to the
rights of the different parties to the action. The validity
of the deed in controversy was not adjudged in the former

case, and the fact that it was of record at that time does not render the former case *res adjudicata* of the question raised here. The conveyance was not presented in the former action and, therefore, could not have been adjudicated. (Hubbard v. Flint, 58 Miss., 266; Davis v. Davis, 4 So., 554; Johnson v. White, 13 S. & M., 584; Scott v. Wagner, 42 Pac., 742; Stringer v. Adams, 98 Ind., 539; Reynolds v. Ali Co., 55 N. E., 305; Elgin Co. v. Meyer, 29 Fed., 229; 5 Wall., 580; Gould v. R. R. Co., 1 Otto, 526; Gilman v. Rives, 10 Peters, 298; Woodland v. Newhall, 31 Fed., 434; Russell v. Place, 94 U. S., 606.) The trend of public opinion, as well as that of legislation, is strongly in favor of applying to irrigation the principles involved in our contention in this case. There is not one authority which is not in absolute accord with such a contention. (Counsel embodied in their brief a number of suggestions made by Hon. Elwood Mead, a former State Engineer, in opposition to the principle that it was competent to sell a water right separate from the land.)

*Gibson Clark* and *John W. Lacey,* for defendant in error.

The court is without jurisdiction upon these proceedings: (a) because one of the joint plaintiffs in error was at the time a deceased person; (b) there is a fatal defect of parties, plaintiff in error. Proceedings in error cannot be instituted in the name of a deceased person. (Kennard v. Kennard, 35 O. St., 660; Taylor v. Elliott, 33 Ind., 441; S. C., 52 Ind.. 588.) An appeal taken in the name of a party after his death is a nullity and his heirs will not be substituted. (Moore v. Slack, 140 Ind., 38; Lillard v. Fields, 7 J. J. Marsh, 148; Owings v. Owings, 3 Gill & J., 1; Booth v. Dotson (Va.), 24 S. E., 935; Boas v. Heister, 3 S. & R.. 271; Sappington v. Phillips, 9 Tenn., 105; Smith v. Cunningham, 2 Tenn. Ch., 565.) The decree was against the defendants jointly. James R. Johnston was not a defendant, having died prior to the decree and his executor and heirs having been severally substituted in his

stead. The executors have in no wise been joined in the proceedings in error, nor been made parties to it. There is, therefore, a fatal defect of parties. (Johnston v. Irr. Co., 4 Wyo., 164; Smetters v. Rainey, 14 O. St., 287; Curtin v. Atkinson, 46 N. W., 91; Pratt v. Fairfield, 56 Kan., 144; Moore v. Franklin (Ind.), 44 N. E., 459; Hampton v. Rouse, 80 U. S., 187; Simpson v. Greely, 87 id., 152.)

When the waters have reached the headgate of the Spring Vale Company they have forever passed by the headgate of the ditch of the plaintiffs in error. And there is no question of seepage from the lands of the Spring Vale Company which would make it better for the Johnston ditch that the waters should be used on the Spring Vale lands rather than on other lands. The sole question, therefore, is, can the Spring Vale Company as against the plaintiffs in error sell to another any portion of its right to use water from Little Horse Creek, provided such sale be made in such way as to do no injury to the Johnstons. As shown by the record, the Spring Vale Company and its grantee had been litigating the question as to the priority of right between them, and, in order to end that litigation, the parties agreed to the sale and conveyance in controversy solely because they could use the waters in such a way that the Johnstons would not be injured. By the changed use the latter would obtain exactly the same amount as if no sale had been made. There is nothing in the statute indicating a remote intention that a water right acquired for irrigation should be inseparably annexed to the land upon which the water was originally applied. Under the statutes, water rights acquired by compliance with local customs and laws become vested rights; and the right of the Spring Vale Ditch Company having accrued and become vested, it is doubtful if the Legislature had the power thereafter to limit such right in any degree beyond the limitations of the law in force at the time they vested and accrued. It is not conceded, however, that the Legislature has attempted any such new limitation. Had the Legislature intended by the

later statutes to establish a rule entirely at variance with the law as uniformly declared by the courts, it is surprising that it did not say so in plain language. To give such a construction to these subsequent statutes as to change a rule of property uniformly admitted by the courts is contrary to every canon of construction. (Sutherland on Stat. Const., Secs. 206, 164, 480, 464; 3 Ency. Law, 751, 758, 741, et seq.)

A water right lawfully acquired is property. (Strickler v. Colo. Springs, 26 Pac., 313; Kidd v. Laird, 15 Cal., 162; Gould on Waters, Sec. 234; Pomeroy's Riparian Rights, Sec. 58; Kinney on Irr., Sec. 264.) It may, therefore, be disposed of. (Babcock v. Buffalo, 56 N. Y., 268; 1 Blackst., 138; Wynehamer v. People, 13 N. Y., 378; 19 Ency. Law, 284, 285; 2 Kent (12th Ed.), 327; Cooley on Const. Lim., 493.) The right to sell and dispose of a water right separate from the land to which it has been applied is well settled as a legal proposition; and in fact there are no authorities to the contrary. (Kinney on Irr., Secs. 264, 265; Strickler v. Colo. Springs, supra; Oppenlander v. Ditch Co., 31 Pac., 855; Frank v. Hicks, 4 Wyo., 502; McPhail v. Forney, id., 556.) And the point of diversion and of the place of use may be changed, provided it be not injurious to the rights of others. (Kidd v. Laird, supra; Fuller v. Min. Co., 19 Pac., 836; Gallagher v. Montecito Co., 35 Pac., 770; Kinney on Irr., Sec. 248.) It would seem that the two cases decided in this court should settle the question beyond controversy, especially as there are no contrary decisions elsewhere. The argument here made in support of a contrary doctrine has been strenuously urged upon other courts, but as yet no court has been willing to accept it as sound. (Kent's Comm., 443; Belknap v. Trimble, 3 Paige Ch., 577; Angel on Water Courses, Secs. 266, 227; Maeris v. Birchill, 7 Cal., 262; Min. Co. v. Morgan, 19 Cal., 609; Davis v. Gale, 32 Cal., 27; Junkans v. Burgin, 67 Cal., 267; Ramelli v. Irish, 31 Pac., 41.) Defendant in error had a right to rely upon

the decisions of the Supreme Court of this state, and its conveyance should not be overthrown, therefore, except upon reasons of the greatest weight. (Sydnor v. Gascoigne, 11 Tex., 455; 23 Ency. Law, 28, 29.)

It is said by counsel for plaintiffs in error that, if the doctrine maintained by defendant in error be held to operate in this state, there will be great difficulty of administration by the executive officers engaged in the work of supervising the distribution of water. The contention contains within itself its own complete and conclusive answer. The water and the lands and irrigating systems are not for the use of the officers, nor for their convenience, nor for ease of administration; they are for the use of the people in such way as will be most advantageous. Civilization and advancement do not simplify the duties of administrative government, but continually render them more complex and difficult. Many of the authorities cited indicate the philosophic principle that water rights can be freely sold. Allowing the point of application and diversion to be changed, the necessary tendency is that the water will be used at its most efficient point; whereas prevention of sale will hold it at the point of present use, regardless of vastly greater opportunities of use elsewhere. The fear that the water will get into the hands of a few is groundless; but, if there were ground for such fear, that would not be sufficient reason to authorize the courts to make laws by decrees, which, if enacted by the Legislature, would be violative of every principle of the constitution. No legislative enactment could take away the property of a citizen or invade the vested rights of the people; and we believe that there is no statute attempting to do so, and certainly there was no such statute at the time of the acquirement of the rights here in controversy. If the Spring Vale Company in 1884 owned these water rights as property, and, as an incident thereof, had the right of sale, such right may not be invaded without invading the right of property itself.

POTTER, JUSTICE.

This is a proceeding in error complaining of a final decree entered by the District Court, in and for Laramie County, perpetually enjoining the defendants below, plaintiffs in error here, from any interference with the plaintiff below, defendant in error here, in the use and enjoyment of an undivided one-half interest in and to ten (10) cubic feet of water per second of time of the waters flowing in Little Horse Creek; the said ten cubic feet of water being the amount awarded to the Spring Vale Ditch Company by decree of the State Board of Control, rendered May 7, 1891, as of priority number eight (8) on said stream, and said undivided one-half interest having been conveyed October 30, 1894, by deed by said Spring Vale Ditch Company to said defendant in error; and the said final decree here complained of also enjoined the plaintiff in error from interfering with the use by defendant in error of the channel of said creek for the purpose of conveying the water aforesaid down to the headgate of the ditch of defendant in error, and its diverting the same into its ditch.

The suit was instituted by the defendant in error against James R. Johnston, Lizzie D. Johnston, George D. Johnston and Harry Homer Johnston, and George W. Snow, as water commissioner. During the pendency of the cause in the court below James R. Johnston died, and, in his stead, Lizzie D. Johnston and George D. Johnston, as executors, and Harry Homer Johnston, as heir at law, were substituted as defendants. Notwithstanding such substitution, the petition in error herein was prosecuted in the names of the original parties, the name of James R. Johnston having been inadvertently used as one of the plaintiffs in error. This error is called to our attention by counsel for defendant in error in their brief, and it is urged that, as the interest of the defendants below was joint, the proceeding in error is improperly prosecuted. Counsel for plaintiffs in error, however, have filed a motion to strike the name of the deceased party from the title; and exhibit a decree of the

District Court, in probate, dated July 21, 1898, some months prior to the decree in the case at bar, whereby it appears that Lizzie D. Johnston was declared and decreed to be the sole legatee under the last will and testament of the deceased; that all the property of the estate be vested in her; that she was then in possession thereof; that the estate had been fully administered, and the executors were thereby discharged. Hence, it appears that said Lizzie D. Johnston, who was one of the defendants below in her own right, as well as executrix, and is a plaintiff in error herein, has succeeded to all the rights of James R. Johnston, deceased, and in fact had so succeeded prior to the entering of the decree complained of. It seems that no injustice can follow the granting of the motion, since all the parties interested are herein named as parties; and, therefore, the motion will be granted, and the name of James R. Johnston will be stricken from the title of the case as one of the plaintiffs in error.

Primarily the respective rights of the contesting parties to the water in controversy is based upon a decree of the State Board of Control adjudicating the priorities on the stream in question. By that decree the Spring Vale Ditch Company was awarded priority No. 8 for ten cubic feet of water per second of time, for the irrigation of seven hundred acres of land; the plaintiffs in error were awarded priority No. 9, for 7.71 cubic feet, to irrigate five hundred and forty acres of land; and the defendant in error priority No. 10, for 17.14 cubic feet, for the irrigation of twelve hundred acres of land. The ditches of the owners of the three priorities above named relatively connect with the stream about as follows: The headgate of the Johnston ditch is located near the head of the stream; the headgate of the ditch of the Spring Vale Ditch Company, two and one-half miles below the headgate of the Johnston ditch; and the ditch of defendant in error has its headgate two and one-half miles below the headgate of the Spring Vale ditch.

The appropriations under which the parties named obtained their respective priorities were made prior to statehood and before the adoption of our constitution and the

creation of the State Board of Control. Proceedings were pending at the time of the adoption of the constitution in one of the District Courts of the state, for the determination of the various priorities upon the stream in question. And, following the enactment of the law by the First State Legislature with reference to the adjudication of water rights by the Board of Control, the said proceedings, by virtue of one of the provisions of that act, were transferred to the'Board of Control, by whom the final decree of adjudication was rendered. On October 30, 1894, the Spring Vale Ditch Company made and executed its deed to the Little Horse Creek Irrigating Company, the defendant in error here, whereby it conveyed to said defendant in error an undivided one-half of the interests of the grantor in and to the waters of Little Horse Creek that had been adjudged to. said grantor by the Board of Control; and it was recited in said deed that "The said waters hereby conveyed and the use thereof being intended to be wholly severed from the lands of the party of the first part or any other person and from use thereon; it being the intention of the said party of the first part to convey to the said party of the second part an undivided one-half in and to all the rights which it may have acquired to the use of the waters of said Little Horse Creek, as involved within the adjudication aforesaid; and to convey the same to the said party of the second part as fully and entirely as it may lawfully do, and to convey to the said party of the second part the unrestricted use thereof by the party of the second part in the irrigation of lands at such point or points as he may elect to use the same."

It was expressly agreed by and between the parties to said instrument, by provision therein inserted, that the said parties, beginning on the 1st day of March in each year, should use the waters that had been adjudged to the grantor as follows: The party of the first part, viz., the Spring Vale Ditch Company, shall be permitted to use all the waters for the term of one week. At the expiration of that time the second party, the Little Horse Creek Irrigating

Company, shall be authorized to use all the waters so adjudged for the period of one week; and so alternately the said waters shall be used by the parties respectively, each using all the waters one week at a time, and no longer, during all of the irrigating season of each and every year, and so long as said parties or either of them shall desire to use the said water in any year. The evidence discloses that after the execution and delivery of this conveyance, the waters that had been appropriated by the Spring Vale Ditch Company were used in the manner set forth in said deed; the defendant in error diverting the waters for its use into its ditch located about two and one-half miles below the ditch of the Spring Vale Ditch Company, and the latter company diverting the water when it used it into its own ditch, by means of which the original appropriation had been effected. It appears that the plaintiffs in error, considering the sale of an interest in said water right to be invalid and to confer no right or title upon the grantee, and that it amounted to an abandonment on the part of the Spring Vale Ditch Company of one-half of its original appropriation, sought and claimed the right to use the same as the next succeeding appropriator. And it is contended on behalf of plaintiffs in error that a sale of a water right separate from the land for the irrigation of which the water was appropriated, is not permitted under the laws of this state. This raises the important question in the case.

In Frank v. Hicks, 4 Wyo., 502, it was held that a water right acquired for the irrigation of lands is an appurtenant to the land and passes with a conveyance of the realty, without being specifically mentioned, but it was said by Mr. Justice Conaway, who delivered the opinion in that case: "It is true that by all the authorities the water right is separable from the land to which it is appurtenant and may be sold separate from the land, and the place of diversion and the place of use may be changed. But this is only when these acts are not injurious to the rights of others." And in the case of McPhail v. Forney, 4 Wyo., 556, the same

learned justice said: "As held in the case of Frank v. Hicks, decided at the present term, a right to the use of water for purposes of irrigation, together with the ditch or other conduit for the water, may be conveyed separate from the land upon which the water is used. It seems that this is what has been done with the water right involved in this case."

We are aware that, notwithstanding the expressions and decisions in the cases above mentioned, which decisions were rendered in 1894, prior to the execution of the deed in question, there has existed in the minds of the administrative officers of the state, charged with the execution of the laws governing the appropriation and distribution of water, an opinion that, by reason of some provisions of our statutes unlike the statutory provisions prevailing in most of the other arid states, water appropriated for the irrigation of land becomes not only appurtenant thereto, but inseparably connected therewith, and, therefore, incapable of transfer or conveyance separate from the land; and the opinion we understand has prevailed among such officers that in the cases aforesaid the effect of our peculiar statutory provisions was not considered.

In view of the fact that such decisions were rendered before the conveyance in question, and that the parties presumably relied thereon in granting and receiving the conveyance, the law ought to be found very clear to justify the court at this time in overruling them, and holding the transfer void.

It is not denied, nor can it be, that it has uniformly been held in this country, wherever the doctrine of prior appropriation is recognized, that a water right obtained by and for the irrigation of land may be sold separate therefrom. (Gould on Waters, Sec. 234; Kinney on Irr., Secs. 264, 265, and cases cited; Long on Irr., Sec. 79; 3 Farnham on Water & Water Rights, Secs. 643 and 679.) Mr. Farnham says in Section 679 of his work above cited: "The right acquired by an appropriation of water being a property

right, it is subject to transfer, the same as any other species of property; and this transfer may be separate from the land upon which it was intended to be used. And this sale may include all of the right to which the vendor is entitled, or it may be limited to a portion of it." And in Section 643, the same author says: "But there is no reason why it should remain attached to the land in connection with which it was first used, and, therefore, the rule is that it may be sold separate from the land."

As an appropriator of water obtains by his appropriation that only of which he makes a beneficial use, it necessarily follows that he cannot sell surplus water which he does not need while retaining his original appropriation; and it has been held that as against a subsequent appropriator, a senior appropriator cannot give the water he does not use to another for a certain period who otherwise would have no right to use it. (Manning v. Fife (Utah), 54 Pac., 113.) So far as we are informed, however, every case in which that or a similar principle has been decided admits that the water right may be sold and conveyed separate from the land, provided that other appropriators are not injuriously affected by such sale.

An individual appropriator of water for irrigation secures no surplus water, hence he has no surplus which he can either sell or give to another as against subsequent appropriations. His appropriation, and therefore his water right dependent thereon, is at all times limited, within the maximum of his appropriation, to the quantity capable of beneficial use and actually so used. If during any period he does not require the use of the water it falls during that period to the subsequent appropriator who does need the same and can beneficially use it. What the appropriator may sell is his water right; that is all he has to sell. That is all that would pass by deed of the land as an appurtenance. The water in the stream is not his property; but his right to use that water based upon his prior appropriation for beneficial purposes is a property right, and as such is

capable of transfer. The only limitation upon the right of sale of a water right separate from the land to which it was first applied, and to which it has become appurtenant, laid down by any of the authorities, is, that it shall not injuriously affect the rights of other appropriators. In other words, the burden upon the use must not be enlarged beyond that which rested upon it under the original appropriation and while in the hands of the original appropriator as he was entitled to and did use it. This principle is the necessary result of the fact that the only property in the water owned by the appropriator is a right to use it as measured by his appropriation.

But it is insisted that, under the statutes of this state concerning the acquisition of water rights, an entirely different rule must prevail. It is not contended that there is any statute expressly prohibiting a sale of a water right acquired for the irrigation of land separate therefrom, but the claim is that because of certain provisions in our statutes such a prohibition is necessarily implied. That result is supposed to follow from the provision in Section 873, Revised Statutes, which prescribes the form and contents of the certificate to be given to the appropriator after determining the priorities by the Board of Control, where it is provided that if such an appropriation be for irrigation, the certificate shall contain a description of the legal subdivisions of land to which said water is to be applied; and the provision in Section 917, Revised Statutes, that before any person intending to acquire a water right shall commence the construction, enlargement or extension of any ditch or other distributing works, he shall apply to the State Engineer for a permit to make such appropriation, in which application the nature of the proposed use must be stated among other things, and a map to be filed with such application, as required by Section 924, is required to show the location and area of all land proposed to be reclaimed, and upon the completion of such an appropriation in accordance with the application, a certificate is required to be sent to

the County Clerk of the same character as that described in Section 873; and the provision in Section 872 that no allotment shall exceed more than one cubic foot of water for each seventy acres of land for which the appropriation was made.

It may be conceded that the various provisions in the statute requiring a showing as to the lands to be irrigated and a description thereof in the final certificate of appropriation, tend to emphasize the principle that a water right acquired for the irrigation of lands becomes appurtenant to the lands irrigated, but we are unable to give to such provisions the interpretation contended for by the learned counsel for plaintiffs in error. They do not, in our judgment, have the effect in any true sense of destroying the reason upon which the right of sale separate from the land is upheld. They do not, in our judgment, have the effect to declare that the right to use water acquired by appropriation is not in itself a property right, nor can any of the provisions to be found in our statute be legitimately construed as either expressly or impliedly depriving the right of its qualities as property, which it otherwise might have, and which, in every other state, is conceded to it.

In the able argument of counsel for plaintiffs in error, reference is made to the fact that in the State of Idaho constitutional and statutory provisions have been enacted for the purpose of rendering the water right acquired for the irrigation of lands forever incapable of separation therefrom by transfer; and we understand that in the statutes of that state there is a provision that the right of the water user shall not be considered as being a property right in itself, but that it shall become appurtenant to the land. It must be conceded that the Idaho statutes go much further than the statutes in this state in its declaration concerning the nature of a water right acquired for irrigation.

The Idaho statutes referred to have, however, been considered by the Supreme Court of that state, and the majority of that court held that users of water from a ditch

or canal acquired such a property right as they may trans-
fer to other lands under such ditch or canal; and that they
may also sell and transfer the right to use such waters, and
the purchasers may transfer it to other lands under the
ditch or canal, so long as the change of place does not in-
terfere with the rights of others. (Hard v. Boise City Irr.
& Land Co., 76 Pac., 331; see also Boise City Irr. & Land
Co. v. Stewart, 77 Pac., 25.) In the case first above cited,
Mr. Justice Ailshie, in a concurring opinion, held that the
provision that a water right should not be a property right
in itself ought not to deprive such right of the character
and quality which constitute it property; and Mr. Justice
Stockslager, in delivering the opinion of the court, said:
"That a party may change the point of diversion when he
takes water from a natural stream is a settled question,
provided he can do so without injury to any other appro-
priator of the waters of the same stream. We do not think
it material whether he takes it to other land than that for
which it was first appropriated; the only question being,
can he so change the place of diversion without injury to
some other appropriator? That a party has such property
interest in water appropriated and used for useful and
beneficial purposes that he can sell, we think, is beyond
controversy; but the buyer cannot take the water to other
lands than that for which it was appropriated, to the detri-
ment of any other appropriator, is equally well settled. If,
however, he can use it upon other lands more beneficially,
where could there be a well founded objection to such
change?" There was a dissenting opinion in the case, but
even that opinion recognizes the right of an original appro-
priator and owner of a water right to sell and transfer the
right to be used upon other land.

In the brief of counsel for plaintiffs in error much is said
with reference to the policy of the rule permitting a sale
of a water right separate from the land, and counsel has
submitted with such brief the views of a former State En-
gineer of this state, who worthily occupies an eminent posi-

tion as an irrigation engineer and whose ability is unques-
tioned, and for whose opinions the members of this court
entertain a high regard.  We are, however, of the opinion
that many of the objections to the doctrine that has been
so firmly settled by the courts are fanciful, and that legisla-
tion in conformity therewith is capable of enactment which
would remove many of the objections from the standpoint
of an intelligent execution of the laws governing the dis-
tribution of the public waters.

In view of the persistency with which such objections
are entertained, and the earnestness with which they are
continually urged by those engaged in administering our
laws on the subject of water appropriations, and the able
presentation thereof by counsel, some reference to them
seems advisable.

It is asserted that the doctrine of sale separate from land
is the doctrine of the courts and not of irrigators.  It is, of
course, true that the public announcement of the doctrine
is to be found in the decisions of courts, but had the owners
of water rights not conceived that they had a property in
their right to use water which they could convey for use
on other lands, there doubtless would have been no con-
veyances to be considered by the courts.  We cannot agree
that the doctrine has resulted from ignorance concerning
irrigation matters.  Nor can we agree with the notion that
men not necessarily or usually trained in the law are more
competent than the courts to determine the legal principles
controlling the use of water by prior appropriation, not-
withstanding that the judges may not as a rule be practical
irrigators.  The fact that judges have not been engaged in
banking or commercial pursuits, or in managing railroads
or other corporate interests, has not been put forward as an
argument to combat the justness of the legal rules and
doctrines that govern financial and commercial transactions,
or that prescribe the duties and powers of railroad com-
panies or other corporations.  Legal doctrines in this coun-
try have generally come from the courts and must in the

nature of the constitution of our government continue so to do except where, within its province, the Legislature declares what the law shall be. Indeed, the courts first announced the doctrine of prior appropriation. The law of this state conferring certain powers upon the Board of Control makes the courts the ultimate judges in case of controversy on appeal; and the courts surely are as much empowered, within the extent of their jurisdiction, to announce doctrines, as are administrative boards. We have no doubt, however, of the wisdom of the policy which places the initial determination of priorities in the hands of such a board.

It may be accepted as true that the rule permitting the sale of a water right separate from the land has been the source of litigation. But that affords no sufficient reason for destroying property rights. We cannot agree that, in order to discourage litigation or render it impossible, the courts should divest the citizen of his property.

Counsel seem to treat the sale in controversy and the question generally of the right of sale separate from the land as a sale of the water itself. But the conveyance does not sell water. The appropriation was made by the use of water for the irrigation of land; and thereby a water right was obtained the nature of which is well understood and settled. The deed conveys an interest in that water right. The interest conveyed passed out of the hands of the original appropriator into the hands of its grantee. It became severed from the land to which it was originally attached, it is true, but it immediately became attached to other land. In the hands of the grantee the right became appurtenant to the land upon which the grantee intended and did apply it. Should the grantee not apply the right to a beneficial use, he could not, of course, retain it. The grantee can by non-user abandon the right in the same manner as the original appropriator. This is not a case where an appropriator for irrigation purposes seeks to hold the water for purpose of sale. The matter stands in the same situation

as though the grantor and grantee had originally made the appropriation and secured the water right in the proportions stated in the deed. The appropriator secured a property right. A portion of that right it sold to be beneficially applied to other lands. It sold not water, but the right to use water; in other words, a water right.

We cannot agree that it requires a strained and distorted interpretation of our statutes to uphold the doctrine permitting the sale of a water right separate from the land. On the contrary, it would require a strained construction of the statutes to deny such a right. There is no reasonable indication in the statutes, in our opinion, that the requirements for describing the land to be irrigated in applications for permits, or in certificates of appropriation, was adopted on the theory that the water right becomes inseparably attached to the particular land, so as to forever be incapable of transfer to other lands. A more reasonable view of the purpose of the requirement is to show that an actual beneficial use has been or is intended to be made of the water claimed to have been appropriated or intended to be appropriated; and to enable those charged with the duty of adjudicating priorities to determine upon some definite basis the amount and quality of the appropriation; as well as to preserve a convenient record of water rights as appurtenant to certain tracts of land. But the fact that the legislative development of this growing subject has failed to provide for a record of transfers of the right to other lands, which we think might be done, is not to be held ground for holding that the right of transfer does not exist.

To adopt the view contended for against the validity of the conveyance in question would, in our judgment, require us to deny the element of property in the water right itself. Nothing in the decisions on the subject nor in the statute authorizes that. The water right when sold does not become, as suggested, a mere "floating right." It becomes appurtenant to other land, if it is intended by the grantee for irrigation, or else is devoted to other equally beneficial

uses. Without some beneficial use after sale, it would doubtless on a proper showing be held abandoned, as in the case of an original appropriator who should intentionally cease to use it.

Moreover, judging from the board's decree in this case, it would seem that the administrative officers have not adhered very strongly to the proposition that the statutes require a description of the land for the purpose of inseparably attaching the water right to the particular tract irrigated. The decree awarded to the Spring Vale Ditch Company a designated water right for the irrigation of seven hundred acres of land. But the particular tracts irrigated were not described, except that the said seven hundred acres are described generally as being located within certain larger tracts in the aggregate amounting to about 1,840 acres. This might perhaps permit the appropriator to apply the water during one season to one part of the land described, and to another part in another season; and this may be the custom in farming under irrigation. To carry the theory contended for to its legitimate and logical conclusion would seem to require the particular area through the irrigation of which the appropriation was made to be described minutely, and thereby show that the water right did not appertain to any other part of the land owned by the appropriator. But the statute evidently does not require such minutia of description, since it provides only for a description of the legal subdivisions to which the water is to be applied.

In view of the fact that the doctrine maintained in other states of the arid region must have been well known to those interested in our legislation, it is significant, it seems to us, that no express legislative declaration on the question has been incorporated in our statutes. And is it not also significant that, notwithstanding the expressions of this court in 1894, in the cases cited in an earlier part of this opinion, the statutes have continued silent in reference to the matter? It is, moreover, significant that the constitu-

tion requires the Legislature to provide by law for the exercise by incorporated cities, towns and villages of the right of eminent domain for the purpose of acquiring from prior appropriators, upon the payment of just compensation, such water as may be necessary for the well being thereof and for domestic uses.  (Const., Art. 13, Sec. 5.)

We are deeply sensible of the responsibility attending a decision of this important question.  We have brought to its consideration for some time careful thought and study, and the result is that we can ascertain no reasonable ground for departing from the well settled principle so firmly and uniformly upheld by all the authorities.

We can perceive nothing in the fundamental principles underlying the doctrine of prior appropriation in the use of water that interferes with the right of sale of the water right, but, on the contrary, those principles seem to be in harmony with such right.  Should the theory be adopted that water appropriated for the irrigation of a certain tract of land must be forever connected with that particular tract and cannot be separated therefrom in any manner by sale, by any other equally beneficial use, or otherwise, much injustice might be caused by reason of the failure of the particular tract to further respond to the skill of the husbandman; it might become valueless for many reasons unnecessary to mention, and the appropriator, who may have expended much money and time in completing the appropriation, would be compelled to forfeit it instead of supplying it to other lands.  The state, certainly, as trustee of the water and interested in its conservation and economical distribution, can hardly be concerned in having a particular tract of land irrigated in preference to any other. Moreover, forfeitures have never been favored in the law. But is not a conclusive answer to the proposition for the new theory that there is no principle of law upon which it can be logically or reasonably based?

The evidence in this case shows that, after the conveyance of the water right in question, the grantor, the Spring

Vale Ditch Company, irrigated not more than one-half as much land as it had previously irrigated, and the grantee applied the water which it obtained, under the conveyance, to the irrigation of one hundred and eighty acres of land. This is not an increase over the quantity of land previously irrigated, and there is nothing in the testimony showing or tending to show that the use of the water since the transfer has resulted in an injury to the plaintiffs in error. Indeed, it is not claimed that they have been injured except upon the theory that they were entitled as the next succeeding appropriator to any water which the Spring Vale Ditch Company may have abandoned.

It must be understood that this case does not present any facts showing a sale of surplus water. The evidence discloses, without contradiction, that the entire amount of the maximum allowed to the Spring Vale Company was seldom, if ever, used, for the reason that the stream did not supply sufficient water in ordinary seasons at least to allow such use. There is no evidence of waste. There is no showing that either of the parties to the deed used more water than they actually required.

It is suggested that the decree commands the plaintiffs in error at all times to refrain from any interference with the maximum quantity allowed by the board to the Spring Vale Ditch Company, in disregard of the custom and necessities of persons engaged in cultivating land by irrigation. It is said, in substance, that an appropriator does not require, and never actually uses a uniform, continuous flow of a certain volume of water; that the allowance of a certain quantity is intended only as a maximum limit as to the use at any one time; but that water is generally used only about three months, and the maximum not over thirty days. Conceding all this, it is not apparent that the decree is to be interpreted as permitting the defendant in error to waste any of the water. If it did, it might require modification. The injunction is against interfering with the use and enjoyment by the defendant in error of the water

to which he is entitled. It clearly cannot operate to prevent the taking of any water which is not required by the defendant in error for the irrigation of the lands to which it is applied; nor do we think it was intended to so operate. The rule must be the same as between any other appropriators. (Long on Irr., Sec. 61.)

There is nothing in the law of prior appropriation that prevents a change of the place of diversion, if that can be accomplished without injury to others. We are unable to discover in the evidence anything to show that the plaintiffs in error are injured by the diversion of the water under the conveyance at the headgate of the ditch of defendant in error, instead of at the point where it was originally diverted by the Spring Vale Ditch Company.

Neither do we discover from the evidence that the use of all the water by the owners on alternate weeks respectively, as provided in the deed, operated to the detriment of the plaintiffs in error. Such an agreement between several persons who have appropriated water as tenants in common does not seem to be objectionable in itself. (Long on Irr., Secs. 61 and 85; Kinney on Irr., Secs. 301, 302; Lytle Creek Water Co. v. Perdue, 65 Cal., 452 (4 Pac., 427); Cache La Poudre Irr. Co. v. Larimer & Weld Res. Co., 25 Colo., 144 (53 Pac., 318); Meagher v. Hardenbrook, 11 Mont., 385 (28 Pac., 451.) It is, of course, true that the defendant in error, as against subsequent appropriators, could use only so much as he could use beneficially. The deed having conveyed an undivided one-half of the water right to the defendant in error, the parties thereupon stood in relation to each other the same as if they had originally made a joint appropriation.

The record disclosing no error, the judgment will be affirmed. *Affirmed.*

CORN, C. J., concurs.