## GROO v. SIGHTS.
## (No. 724.)

WATER AND WATER RIGHTS—PRIORITY OF APPROPRIATION—CHANGE OF
POINT OF DIVERSION—RES JUDICATA—ABANDONMENT OF DITCH—
COURTS—JURISDICTION.

1. Where, in an action to enjoin interference with a proposed
   change by an appropriator of water in the place of diver-
   sion, *held,* that plaintiff could not base any right to make
   the change upon his construction of a ditch at the proposed
   new point of diversion prior to a decree in a former action
   between the parties which involved and denied the right of
   plaintiff to make a diversion of the water at that place by
   means of said ditch.

2. In an action to enjoin interference with plaintiff in changing
   the place of the diversion of appropriated water, the fact
   that he had constructed a ditch to divert the water at the
   proposed new point of diversion many years previously did
   not entitle him to make such diversion, it appearing that he
   had long ago abandoned the ditch and it had passed into
   the possession of the defendant, who had become the owner
   of the land upon which it had been constructed.

3. In said action the plaintiff claimed that prior to 1890 he had
   constructed a ditch to divert water from the proposed new
   point of diversion, but defendant claimed that in an action
   between plaintiff and defendant or his predecessor in in-
   terest a decree was entered in 1890 which denied plaintiff's
   right to any appropriation by means of said ditch, and it
   was not shown that after said decree the plaintiff at any
   time used or attempted to use the said ditch or any part
   of it or diverted or attempted to divert any water of the
   stream into that ditch until, on one occasion in 1906, when
   such an attempt was made, but before reaching the land of
   plaintiff the water was turned back into the stream sup-
   posedly by the defendant, and the defendant having be-
   come the owner of the land crossed by the old ditch, used
   the same more or less for several years, after cleaning it
   out and reconstructing it, for the irrigation of his land, and
   apparently without objection on the part of the plaintiff.
   As reconstructed and used by the defendant the ditch would
   not reach, or take the water upon, the plaintiff's land.
   *Held,* that the ditch had been abandoned by the plaintiff.

4. Assuming, without deciding, that the place of diversion of
   appropriated water may be changed if it can be done with-
   out injury to the rights of others, such change cannot be

made when it will injure either subsequent or prior appropriators.

5. Whether the statutory declaration that water rights cannot be detached from the lands, place, or purpose for which they are acquired, without loss of priority, changes the rule authorizing a change in the place of diversion if done without injury to the rights of others, is not decided, but it is intimated that since a legislative intention to change such well settled rule should be clearly expressed, it may be doubted whether the statute is sufficiently clear in that respect.

6. Where an appropriator of water has actually changed his place of diversion or is engaged in making such change he will not be entitled to a decree establishing his right to do so as against another appropriator unless it is shown that the latter will not be injuriously affected by the change.

7. Plaintiff having an appropriation of water sought to change the point of diversion to a point higher up on the stream near the point where water appropriated by defendant, a subsequent appropriator, was diverted. It was shown that below the point of defendant's diversion and between that and the point of plaintiff's original diversion the volume of water in the stream was increased by springs. *Held,* that such increase in the volume of the water below defendant's point of diversion, which added to the quantity of water in the stream at the point of plaintiff's diversion was a direct benefit to the defendant as a subsequent appropriator which would be lost if the full amount of plaintiff's prior appropriation should be diverted at the proposed new place of diversion, and the loss of that benefit would be a substantial injury sufficient to deny the right of the plaintiff to make the proposed change, it appearing that but a small amount of water usually flowed in the stream and that all of it seemed to have been appropriated.

8. It further appearing that the proposed change of plaintiff's place of diversion was for the purpose of irrigating land not previously irrigated, which would require more water to successfully irrigate and cultivate it than the land upon which the water appropriated by the plaintiff had been applied, *held;* that such enlarged use might also be a detriment to the defendant.

9. The right to change a place of diversion of appropriated water cannot be acquired by appropriating the ditch of another without the owner's consent.

10. Assuming that an appropriator of water may change the point of diversion when it can be done without injury to others, the court, in the exercise of its general jurisdiction, may protect one lawfully engaged in making such change against unlawful interference, in the same manner and to the same extent that it might protect one lawfully engaged in making or completing an original appropriation or diversion, but in the absence of any interference with a lawful act, or the existence of other conditions, which may afford legal or equitable ground for invoking the jurisdiction of the court to grant relief, it is seriously to be doubted whether the court would have authority, unless expressly conferred by statute, to determine by decree in advance of any act appropriating water or initiating an appropriation, or changing a point of diversion, what the rights of the party is or may be in any such particular.

[Decided July 19, 1913.]                    (134 Pac. 269.)

ERROR to the District Court, Uinta County; HON. DAVID H. CRAIG, Judge.

The action was brought by O. H. Groo against John M. Sights, the nature of the controversy being stated in the opinion. From a judgment for defendant the plaintiff brought error.

*J. H. Ryckman,* for plaintiff in error.

The only point involved is plaintiff's right to change the point of his diversion. The case seems to have been decided upon the theory that no decree is required to enable the plaintiff to make a change in the place of such diversion, and that if any authority to do so is necessary it should be secured from the board of control or the water division superintendent. While one who has a lawful appropriation of water for irrigation purposes may change the place of diversion without losing his right or priority without any decree of the Court or permission of the board of control, it does not follow that he may not apply to a court for a decree declaring his right to make such change, upon showing that the rights of others are not injuriously affected by such change.

*B. M. Ausherman,* for defendant in error.

The issues in this case were the same as those involved in the action determined by the decree of the District Court in 1890. The entering of such decree is alleged in the answer, and it is here contended that it denied the right now claimed by the plaintiff, and as between the parties, the matter has therefore been fully settled and determined. An appropriator cannot change his point of diversion except in the manner prescribed in the statutes. (Comp. Stat. 1910, sec. 726 et seq.) The statutes make it imperative that application must be made in some form to the state engineer or board of control. The statute furnishes a special method of procedure, with a right of appeal from the decision of the board to the court. Plaintiff is not seeking merely to change the place of his diversion, but his purpose is to take from the defendant his place of diversion and his ditch, and thereby destroy the defendant's appropriation which had been established in his favor on the trial of the former action.

POTTER, JUSTICE.

The plaintiff in error brought this action in the District Court of Uinta County against the defendant in error, and brings this proceeding in error to reverse the judgment rendered in favor of the defendant. The action was for damages for alleged interference by the defendant with an alleged water right of the plaintiff, and for an injunction restraining further interference. The petition alleged plaintiff's ownership and possession of certain described land, and then alleged a water right therefor, and interference by the defendant with such right, as follows: "That by decree of this Court made and entered the plaintiff became the sole and absolute owner of a water right for said land, and that he has ever since used said water right for the irrigation of his said land, except when interfered with and deprived of the same by the defendant as hereinafter set out. * * * * * * That in the season of 1906, and every season since, the defendant has diverted the plaintiff's

water to defendant's own use, and interfered with the plaintiff's said water and water right, and has prevented the plaintiff from using the same on portions of said land," describing a part of the land. The answer denied any interference by the defendant with the plaintiff's water right, and alleged that the plaintiff had unlawfully cut the defendant's ditches and interfered with his water right, and claimed damages therefor.

By oral stipulation at the commencement of the trial all claim for damages by either party was waived. Each of the parties has an established right to the use of water, principally for irrigation, from Spring Creek, a small stream, a tributary of Bear River, fed by springs at its source and along its course. The source of the stream is apparently in Section 4, Township 25 North, Range 119 West of the Sixth Principal Meridian, and, pursuing generally a southwesterly course, it flows into and crosses the southeast corner of section 5, the north half of section 8, the northeast quarter of section 7 and a part of the southeast quarter of section 6, in said township and range. The defendant is the owner of land in the southeast quarter of section 5 and the northeast quarter of section 8, and the plaintiff is the owner of a tract of 160 acres lying partly in section 7 and partly in section 6, and it seems also that he has or had a desert entry covering 40 acres in section 6 and 40 acres adjacent thereto in the southwest quarter of section 5. The defendant's land is nearer the source of the stream than the land of the plaintiff, but the right of the plaintiff to the quantity of water appropriated by him is prior to that of the defendant. The only appropriation made by the plaintiff has a priority dating from 1879. Defendant's first appropriation appears to have been made in April and May, 1888, and he made a second appropriation dating March 6, 1907. By decree of said District Court in 1890 the previously acquired and then existing rights of the parties, as against each other, to the use of the water of said stream were established. That decree recites that the court found.

upon the evidence that in 1879 the plaintiff appropriated 920 cubic inches of water per second; that his ditch and dam were located on said stream at a point near the southeast corner of the southwest quarter of the southeast quarter of section 6, township and range aforesaid, said point being located on said section 6; that during the months of April and May, 1888, the defendant appropriated water from said stream by the construction of a dam and ditch on the southeast quarter of section 5. The judgment of the court upon those findings was expressed as follows:

"It is therefore considered and adjudged by the Court that by reason of the appropriation by said plaintiff as aforesaid, he, the said plaintiff, as against said defendant, of the waters flowing in said creek at the point on said section six where said appropriation was made hath a prior right, and that the amount of water to which he hath such prior right is nine hundred and twenty inches per second, for beneficial uses, and it is further decreed that said defendant by reason of the appropriation made in April and May, 1888, by means of his ditch and dam aforesaid constructed on said section five appropriated as against said plaintiff all the water running in said stream to the full capacity of his said ditch for beneficial uses saving to the plaintiff at all times nine hundred and twenty cubic inches per second at said point on section six, and it is further ordered that each of the parties hereto pay and bear his own costs in this behalf expended."

By an adjudication of the State Board of Control concluded in December, 1908, that decree appears to have been followed, and for the rights therein determined certificates of appropriation were issued in accordance with the order of the board. A certificate was issued to Orson H. Groo, the plaintiff, describing his appropriation as follows: "Amount of Appropriation .52 cu. ft. per sec.; Date of Appropriation 1879; Description of land to be irrigated and for which this appropriation is determined and established; Total Acreage Thirty-seven (37) acres. 18 A. NW. ¼,

SE. ¼, Sec. 6, Tp. 25 N., R. 119 W.  19 A. SW. ¼, SE. ¼, Sec. 6, Tp. 25 N., R. 119 W.  The water for said land to be taken from Spring Creek at a point near the SE. corner of SW. ¼, SE. ¼, Sec. 6, Tp. N., R. 119 W.  * * * * The right to water hereby confirmed and established is limited to irrigation and the use is restricted to the place where acquired and to the purpose for which acquired; rights for irrigation not to exceed one cubic foot per second for each seventy acres of land for which appropriation is herein determined and established."  A certificate based upon said adjudication was also issued to John M. Sights, the defendant, showing his appropriation to be .42 cubic feet per second, dating April and May, 1888, for stock purposes and the irrigation of thirty acres in the SW. ¼ of the SE. ¼, Sec. 5. Tp. 25 N., R. 119 W., and restricting such use to the place where acquired and the purpose for which acquired, and to one cubic foot per second for each seventy acres of land.  Based, as we suppose, upon a permit previously granted, the Board of Control on March 26, 1910, issued a certificate to the defendant for an appropriation from said stream of .57 cubic feet, dating March 6, 1907, for the irrigation of 39.93 acres of land in the NW. ¼ of NE. ¼, Sec. 8, and SW. ¼, SE. ¼, Sec. 5.  The right so granted was also restricted as in the other certificates to the place where acquired, the purpose for which acquired, and to one cubic foot per second for each seventy acres of land.

It developed upon the trial, during the examination of the plaintiff as a witness in his own behalf, that he was not complaining of any interference with his right to take the amount of water appropriated by and allowed to him from the place of diversion specified in the decree aforesaid and in his certificate of appropriation, but that if defendant had been guilty of any interference with plaintiff's right or alleged right, it was an interference with an attempted diversion by the plaintiff about a mile farther up the stream and at or near the place of defendant's diversion.  It appeared that on one occasion in 1906 the plaintiff turned the

water of the stream into a ditch at the place last mentioned for the purpose, as he says, of irrigating the two north forties of his 160-acre tract, which his evidence tended to show had not been irrigated, and could not be irrigated from the place of diversion to which he was restricted by the decree of 1890 and the order of the Board of Control. It also appeared from the plaintiff's testimony that the water as diverted by him at said point farther up the stream for the purpose stated was allowed to run possibly two or three days and was then turned into the original channel, and he supposed that had been done by the defendant. No other act of the defendant interfering with any diversion or use of the water by the plaintiff was shown, nor was it shown that plaintiff again diverted the water at the higher point aforesaid or made any attempt to do so.

Having testified to his attempt to divert the water above his original point of diversion the plaintiff was asked this question: "And you wish now in this suit of yours to have a decree of the court to permit you to bring this water upon these two forties of high bench land that you have no water for?" His answer was: "That's the only thing I'm here for." On cross-examination he admitted that he had been using the point of diversion specified in the decree and his certificate of appropriation "right along;" that he never had any other point of diversion; that he had received the amount of water decreed by the court at his original point of diversion; and that his sole object in going up the stream, or desiring to go up the stream, was to irrigate the north forty or the north forties of his land, but he said: "I don't know but the court may have headed me off so I haven't got any water." It appears from his testimony that he had attempted to use the water from the point farther up the stream prior to the decree of 1890, and that the action resulting in that decree was brought by him for the purpose of restraining the defendant, or his representative or predecessor in interest, from interfering with such diversion by him at that place, and that his right to make

such diversion was decided adversely to him in that action, and also by the Board of Control in its subsequent adjudication. He stated on cross-examination that prior to the decree he had constructed a ditch from said upper point of diversion running in a direct line to the two north forties of his land, and obtained an order restraining Mr. Sights from interfering with him in so diverting the water. Referring to such testimony he was asked this question: "Was this diversion before this decree which you obtained, giving you a restraining order on Mr. Sights?" He answered: "It was before." He was then asked: "This matter was all tried out before Judge Corn, the preceding judge?" He answered: "Yes, sir." Further on in the cross-examination, he testified as follows: "Q. You have a water right for one of these forties. Now, do you wish that your water right for one of these forties be transferred to the other forty? A. I want my water right so that I can use it on my entire homestead entry. Q. Don't you use it on your homestead entry? A. On each and every legal subdivision, that's what I want. Q. Then, you want this court to give you a decree so that you can use it on 160 acres of land instead of using it on 37, that's the situation, is it not? A. That's what I demand. Q. You demanded the same thing before the Board of Control when you made proof? You asked the same thing, did you not? A. Yes, that's the substance of it."

When it fully appeared by plaintiff's evidence that what he was seeking was to establish a right to divert the water at a different place and farther up the stream than that specified in the decree and his certificate of appropriation and for use on other lands, his counsel asked and was granted leave, over the objection of defendant, to amend the petition by alleging that in 1906 the plaintiff changed the point of diverting the water appropriated by him and took the same out at about the center of the SE. ¼ of the SE. ¼ of Sec. 5, "as he lawfully might do," and inserting as part of the prayer that the court find and decree that

such change was lawful and within the rights of the plaintiff. It is not clear from the testimony whether the plaintiff attempted or desires to wholly change the place of his diversion, or to establish a new place of diversion to be used part of the time only, retaining the orignal diverting point for use in irrigating the lands under the ditch taking water therefrom. But that is not material in this case. No ground for equitable or other relief is shown by the evidence, unless it shows that plaintiff lawfully changed the place of diversion, or established a new place of diversion for a partial use of the water, and that the defendant unlawfully interfered therewith, or unless under the pleadings and upon the evidence the plaintiff is entitled to a decree granting or establishing his right to make such change hereafter. This seems to be conceded by counsel for plaintiff in error, for it is said in his brief that "the only point involved is the right of the plaintiff to change the point of diversion," and further: "The fact is this suit was instituted upon the theory that the plaintiff has a right to change his point of diversion without leave of court or of the Board of Control and the plaintiff sought a restraining order against the defendant to prevent him from interfering with the plaintiff in making such change." And the only ground of error suggested in the brief is that the court should have granted the relief asked by the amendment to the petition. Counsel's position appears to be that even in the absence of any established or actual change in the point of diversion, a decree might be entered and should have been entered declaring the plaintiff entitled to make the proposed change.

It is clear that the plaintiff cannot base any right to make a change in place of diversion upon his construction of a ditch prior to 1890 for the purpose of diverting water at the point in section 5 where he attempted to divert it in 1906. We think it reasonably to be inferred from his own testimony that whatever right he may have claimed in 1890 to divert the water at the place now proposed was involved

in the action which terminated with the decree of that year, and that the decree denied any right on his part to make such diversion. But if the matter was not involved in that case and determined by the decree, the plaintiff abandoned the ditch, and it passed long ago into the possession of the defendant. It is not shown that after the decree of 1890 the plaintiff at any time until the one occasion in 1906 used or attempted to use said ditch or any part of it or diverted or attempted to divert any of the water of the stream into that ditch, or to divert the water from any other place than that specified in the decree. On the contrary, it appears that the defendant became the owner of the land in section 5 crossed by that old ditch, and used the ditch more or less since 1895 or 1896. The defendant testified that finding an old ditch there which was washed full, he cleaned it out and reconstructed it, and has since used it for irrigating his land, and that was apparently done without any objection on the part of the plaintiff. That is the ditch, according to the undisputed testimony of the defendant, into and through which the plaintiff attempted to divert the water in 1906, using, as the defendant testified, the same point of diversion established and used by the defendant. As reconstructed and used by defendant the ditch would not reach, or take the water upon, the plaintiff's land, as we understand from the evidence, but to conduct the water upon his land when so diverted it appears that the plaintiff cut the ditch at a point on the defendant's land so that the water might run into another ditch from said point to plaintiff's land.

In this case it may be assumed, without so deciding, that the place of an appropriator's diversion may be changed if it can be done without injury to the rights of others. That is the well settled rule in other states where the right to water may be acquired by priority of appropriation for irrigation or other beneficial uses. (1 Wiel on Water Rights, 3rd Ed., sec. 504; 2 Kinney on Irr., 2nd Ed., sec. 887). Whether the right to make such change now exists in this

state may depend upon the construction and effect of the statutory declaration that "water rights cannot be detached from the lands, place or purpose for which they are acquired, without loss of priority." (Laws 1909, Ch. 68, Sec. 1, Comp. Stat. 1910, Sec. 724). We find it unnecessary to decide the question, but this much may be said: We do not understand it to be here contended that the statute referred to prohibits a change merely in the place of diversion. To allow such a change when others will not be injuriously affected thereby is not only manifestly just, but, before the enactment of that statute, it was held by this court that the place of diversion may be changed if it can be accomplished without injury to others, following the well settled rule on the subject. (Johnston v. Little Horse Creek Irr. Co., 13 Wyo. 208, 79 Pac. 22, 70 L. R. A. 341, 110 Am. St. Rep. 986). It would seem, therefore, that a legislative intention to change the rule thus settled should be clearly expressed, and it may be doubted whether the statute is sufficiently clear in that respect. Under the rule permitting the point of diversion to be changed, it cannot be done when the change will injure others, and this protects subsequent as well as prior appropriators. (1 Wiel W. R., 3rd Ed., sec. 505). It is not clear that the plaintiff, as against the defendant, could now take advantage of a general rule allowing the place of diversion to be changed, for it seems that the defendant, if not a party to the action which resulted in the decree of 1890, has succeeded to the rights of the defendant in that action under said decree. Aside from the part of the decree showing the findings and judgment the record in that action is not before us; but there must have been some substantial reason for restricting the plaintiff, as against the defendant in the action, to the particular place of diversion specified in the decree, and it might be seriously doubted whether, as between the parties and their successors in interest, that question can be reopened, without some ground for reopening the decree itself. We do not understand the case to have been a statutory proceeding for

adjudicating priorities, but an action under the general equitable jurisdiction of the court to restrain interference with an alleged right of the plaintiff. If, however, the plaintiff is not bound by the decree as to place of diversion under his existing appropriation, then, under the rule as stated, if the plaintiff had actually changed the place of his diversion, or was engaged in making such change, he would not be entitled to a decree establishing his right to do so as against another appropriator, unless it was shown that the latter will not be injuriously affected by the change. No such showing was made in this case. On the contrary we think the evidence clearly discloses that the change would result in substantial injury to the defendant.

It is shown by defendant's evidence that below the point of his diversion and between that point and the point of plaintiff's original diversion the volume of water in the stream is increased by springs. That is a direct benefit to defendant as a subsequent appropriator, which he would lose if the full amount of plaintiff's prior appropriation should be taken out of the stream where it appears the plaintiff now wishes to divert it. The loss of that benefit, in view of the fact that but a small amount of water usually flows in the stream and that all of it seems to be appropriated, would be a substantial injury sufficient to deny the right of the plaintiff to make the proposed change, assuming that otherwise he might be entitled to make such change. (Bates v. Hall, 44 Colo. 360, 98 Pac. 3). Again, the proposed change is for the purpose of irrigating land not previously irrigated, and which will require more water to successfully irrigate and cultivate it than the land upon which the water appropriated by plaintiff has been applied. Such enlarged use might also be a detriment to defendant. (Bates v. Hall, *supra;* Diez v. Hartbauer, 46 Colo. 599, 105 Pac. 868; Baer Bros. L. & C. Co. v. Wilson, 38 Colo. 101, 88 Pac. 265). In the case last cited the court say: "If the appellant was the only appropriator, it would have the right to change the point of diversion or place of use of the

water as frequently as desired, because there would be none having rights which might be affected; but, when a subsequent appropriator makes his diversion, he acts under the belief that the water appropriated by his senior will continue to be used as it was at the time of the making of the appropriation of the junior. So a subsequent appropriator has a vested right as against the senior to insist upon a continuance of the conditions that existed at the time he made his appropriation."

If it be conceded that the right exists generally to change a point of diversion when it can be done without injury to others, it does not appear that the plaintiff has made any such change, or that he was lawfully engaged in doing so. He did, it is true, at one time in 1906, divert the water at the point of the proposed change, but that was done by using a ditch which had long since been abandoned by him, and was in the lawful possession of the defendant, and it does not appear that the water so diverted, or any part of it, was carried upon the plaintiff's land. Certainly he could acquire no right by appropriating to his own use the ditch of another without the owner's consent. Further, it does not appear that he has any present right to cross with a ditch of his own the defendant's land, or that he has attempted or is attempting to acquire such right. That the defendant objected to plaintiff's use of the ditch is shown by his act which is here complained of. The plaintiff is apparently seeking a decree which would establish his right to divert the water at practically, if not identically, the same place where the water is diverted by the defendant, and in effect to appropriate that place and take it from the defendant, without any compensation.

If we understand the contention of counsel for plaintiff, it is not that the plaintiff has established a change in place of diversion, and is, therefore, entitled to protection against interference therewith; but that desiring to make such change, he may maintain an action to have his right to do so determined beforehand. If that should be conceded, the

plaintiff has not shown a right to the change, for the reason that he has failed to show that the defendant or others would not be injured. We are not prepared, however, to assent to the proposition that an action for a determination of the matter in advance can be maintained, in the absence of statutory authority. Assuming that it would be within the rights of an appropriator to change the point of diversion if done without injury to others, the court, in the exercise of its general jurisdiction, might, no doubt, protect one lawfully engaged in making such change against unlawful interference, in the same manner and to the same extent that it might protect one lawfully engaged in making or completing an original appropriation or diversion. But in the absence of any interference with a lawful act, or the existence of other conditions, which may afford legal or equitable ground for invoking the jurisdiction of the court to grant relief, it might be seriously doubted, we think, whether the court would have authority, unless expressly conferred by statute, to determine by decree in advance of any act appropriating water or initiating an appropriation, or changing a point of diversion, what the rights of the party are or may be in any such particular. In effect the proposition would seem to be that application may be made to the court for a decree permitting the point of diversion to be changed, upon calling in and compelling the interested parties to submit their objections, if any, and upon finding that the proposed change will not injuriously affect others.

In most, if not all, the other states where irrigation is practiced, and water for that purpose and other beneficial uses may be appropriated, the right to change a point of diversion where others will not thereby be injured seems to be recognized by statute, and in some of them a proceeding is provided for, either in court or before an administrative officer or board, wherein the questions involved may be determined in advance, and an order or decree may be entered declaring the right to make the change, or deny-

ing it. There is no statute in this state authorizing such a proceeding to be instituted in any court, nor has our attention been called to any statutory authority for such a proceeding to determine in advance the right to change a point of diversion. When it is proposed to change to a preferred use, as such use is defined in section 725 Compiled Statutes, it is provided in section 726 that "the procedure for a change of such use shall embrace a public notice, an inspection and hearing if necessary by and before the proper division superintendent, a report of such superintendent to the Board of Control, and an order by said board. If the change of use is approved, just compensation shall be paid and under direction of the board, proper instruments shall be drawn and recorded." That section does not expressly refer to a change in place of diversion for the same use as that for which an appropriation was made. But if it might be supposed to be applicable to that matter, its provisions were not followed in this case.

Our conclusion is that upon the pleadings and the evidence the plaintiff is not shown to be entitled to any relief, and the judgment will therefore be affirmed. *Affirmed.*

Scott, C. J., and Beard, J., concur.